Hearing Date: February 25, 2015 at 9:45 a.m. (EST)
Objection Deadline: February 18, 2015 at 4:00 p.m. (EST)

ALSTON & BIRD LLP
William Hao
90 Park Ave.
New York, New York 10016
Telephone: (212) 210-9400

-and-

David A. Wender (admitted *pro hac vice*)
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000

*Counsel for U.S. Bank National Association,
as Trustee for the Registered Holders of
GS Mortgage Securities Corporation III
Commercial Mortgage Pass-Through Certificates,
Series 2011-GC, by Rialto Capital Advisors, LLC,
solely in its capacity as special servicer*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 |
| GTA REALTY II, LLC, | : Case No. 14-12840 (REG) |
| Debtor. | : |

-----------------------------------------------------------x

**OBJECTION OF RIALTO CAPITAL ADVISORS, LLC, SOLELY IN ITS
CAPACITY AS SPECIAL SERVICER, TO THE DEBTOR'S APPLICATION FOR
AN ORDER EXTENDING THE DEBTOR'S 120 DAY EXCLUSIVE PERIOD TO
FILE A PLAN OF REORGANIZATION AND THE DEBTOR'S 180 DAY PERIOD
<u>TO SOLICIT ACCEPTANCES TO A PLAN OF REORGANIZATION</u>**

## **TABLE OF CONTENTS**

Page

BACKGROUND ...........................................................................................................................1

   The Loan ...................................................................................................................................1

   Relevant Case Background .......................................................................................................2

ARGUMENT .................................................................................................................................4

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Adelphia Commc'ns Corp.*,
   352 B.R. 578 (Bankr. S.D.N.Y. 2006) .................................................................................. 5, 6

*In re Dow Corning Corp.*,
   208 B.R. 661 (Bankr. E.D. Mich. 1997) ............................................................................... 5, 6

*In re Express One Int'l, Inc.*,
   194 B.R. 98 (Bankr. E.D. Tex. 1996) ....................................................................................... 5

*In re Geriatrics Nursing Home, Inc.*,
   187 B.R. 128 (D.N.J. 1995) ...................................................................................................... 5

*In re Grossinger's Assocs*,
   116 B.R. 34 (Bankr. S.D.N.Y. 1990) ........................................................................................ 5

*In re Mother Hubbard, Inc.*,
   152 B.R. 189 (Bankr. W.D.Mich. 1993) ................................................................................... 5

*In re Texaco Inc.*,
   81 B.R. 806 (Bankr. S.D.N.Y. 1988) ........................................................................................ 5

**STATUTES**

11 U.S.C. § 1121 .............................................................................................................................. 4, 5

**OTHER AUTHORITIES**

H.R.Rep. No. 595, 95th Cong., 2d Sess. 231-232 (1978),

   reprinted in 1978 U.S.C.C.A.N. 5787 ……………………………………………………5

U.S. Bank National Association, as Trustee for the Registered Holders of GS Mortgage Securities Corporation III Commercial Mortgage Pass-Through Certificates, Series 2011-GC ("**Lender**"), by Rialto Capital Advisors, LLC, solely in its capacity as special servicer, ("**Rialto**") hereby files this Objection (the "**Objection**") to the *Debtor's Application for an Order Extending the Debtor's 120 Day Exclusive Period to File a Plan of Reorganization and the Debtor's 180 Day Period to Solicit Acceptances to a Plan of Reorganization* (the "**Motion**").  In support of the Objection, Rialto respectfully states as follows:

## BACKGROUND

**The Loan**

1. The facts underlying Lender's $4,200,000.00 loan to the Debtor (the "**Loan**") pursuant to certain loan documents (the "**Loan Documents**") are set forth in detail in the *Objection of Rialto Capital Advisors, LLC, as Special Servicer, to Debtor's Motion for Order Approving Disclosure Statement* (Docket No. 26; the "**Disclosure Statement Objection**").  The facts set forth in Rialto's Disclosure Statement Objection are hereby incorporated by reference.

2. As further described in the Disclosure Statement Objection, there have been numerous monetary and nonmonetary defaults by the Debtor under the Loan Documents. *See* Disclosure Statement Objection ¶¶ 9-23.

3. These defaults are ongoing and have not been cured.

4. The Debtor currently owes Lender no less than $5,104,446.30,[1] as follows:[2]

---

[1] The interest calculations are through January 30, 2015.
[2] Such amount does not include fees and expenses incurred by Rialto after December 1, 2014 for counsel to Rialto or other the obligations owing under the Loan Documents, including other fees and expenses of counsel and the fees and expenses associated with the Receiver or Late

- 1 -

    (a) Principal in the amount of $4,056,148.66;

    (b) Non-Default Interest accrued through January 30, 2015, in the amount of $264,582.58;

    (c) Default interest accrued through January 30, 2015, in the amount of $566,485.63;

    (d) Non-Sufficient Fund fees reimbursements in the amount of $50.00;

    (e) Force Place Insurance Premium reimbursements in the amount of $576.26;

    (f) Tax and Insurance Advance reimbursements in the amount of $71,294.39; and

    (g) The fees and costs, expenses, administrative fees, attorneys' fees, and costs incurred in connection with the issuance of third-party reports in connection with the Properties, which currently total no less than $145,308.78.

**Relevant Case Background**

5.    On October 8, 2014 (the "**Petition Date**"), the above-captioned Debtor filed a voluntary petition under Chapter 11 of Title of 11 of the United States Code (the "**Bankruptcy Code**").

6.    Before the Petition Date, on May 15, 2014, Rialto commenced a foreclosure action (the "**Foreclosure Action**") in the United States District Court for the Southern District of New York ("**District Court**") seeking the foreclosure of the Debtor's principal assets – two apartment buildings located at 184 Prince Street, New York, New York 10012 and 287 Bleecker Street, New York, New York 10014 (the "**Properties**").

---

Fees. Such amount also does not include the amount necessary to satisfy the Payment After Default Premium contemplated under the Loan Agreement. Rialto reserves its right to seek and obtain all amounts due and owing under the Loan Documents; including, without limitation, the preceding.

7. In connection with the Foreclosure Action, the District Court ordered that GlassRatner Management and Realty Advisors, LLC ("**GlassRatner**") serve as the Receiver over the Properties.

8. On January 6, 2015, the Court entered the Stipulation and Order Concerning Receiver's Continued Management of the Properties Pursuant to 11 U.S.C. § 543(d) [Docket No. 34] (the "**Receiver Order**").[3]

9. Pursuant to the Receiver Order, GlassRatner is authorized to continue acting as the receiver for the Properties and, thus, serve as manager for the Properties.

10. On December 5, 2014, the Debtor filed the *Plan of Reorganization* (Docket No. 20; the "**Plan**") and *Disclosure Statement* (Docket No. 21; the "**Disclosure Statement**").

11. On December 5, 2014, the Debtor also filed the *Motion for Order Approving Disclosure Statement* (Docket No. 22), with a hearing on the motion to be held on January 6, 2015.

12. Both the Lender and the Official Committee of Unsecured Creditors that was appointed in this case objected to approval of the Disclosure Statement. *See* Dockets No. 26 & 30 (the "**Disclosure Statement Objections**").

13. As of the filing of this Objection, the Debtor has not made nor proposed modifications to either the Plan or the Disclosure Statement.

14. After several adjournments, the hearing on the Disclosure Statement is now scheduled for February 25, 2015. *See* Docket No. 41.

---

[3] On January 13, 2015, Glass Ratner filed its Application for an Order Authorizing the Employment of Wenig Saltiel as Special Counsel to "perform services that will be necessary to assist the Receiver in fulfilling and discharging its duties." [Docket No. 35] (the "**Receiver Application to Employ Counsel**").

- 3 -

15. On February 4, 2015, the day before its exclusive period was set to expire, the Debtor filed the Motion.

16. On February 18, 2015, the original deadline for filing objections to the Motion[4], counsel for the Debtor provided Rialto with a draft amended disclosure statement based upon a non-binding commitment letter with respect to financing that apparently would provide financing to two insiders to the purchase the Properties pursuant to a private sale.

## ARGUMENT

26. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a chapter 11 plan (the "**Exclusive Filing Period**"). Section 1121(c)(3) of the Bankruptcy Code provides that, if the debtor proposes a plan within the Exclusive Filing Period, the debtor has a period of 180 days after the commencement of the chapter 11 case to obtain acceptances of such plan (the "**Exclusive Solicitation Period**" and, together with the Exclusive Filing Period, the "**Exclusive Periods**"). Accordingly, the Debtors' initial Exclusive Filing Period and the Debtors' initial Exclusive Solicitation Period should have expired on February 5, 2015, and April 6, 2015, respectively. Rialto respectfully submits that Debtor's Exclusive Periods should not be extended for any period. The Debtor has been attempting to sell the Properties since before their bankruptcy filing and have consistently demonstrated an inability or unwillingness to consummate a transaction. The latest introduction of a non-binding commitment letter and revised disclosure statement in the face of deadlines imposed by the

---

[4] Rialto and the Debtor, in an good-faith effort to resolve any objections to the Motion, agreed that this Objection would not be filed until February 20, 2015.

- 4 -

Bankruptcy Code further demonstrates this pattern of delay. Accordingly, the Motion should be denied.

27. Section 1121(d) of the Bankruptcy Code grants this Court the authority to terminate the Exclusive Periods for cause and provides, in pertinent part:

> On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause … reduce the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d). *In re Adelphia Commc'ns Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006); *In re Grossinger's Assocs*, 116 B.R. 34 (Bankr. S.D.N.Y. 1990); *In re Texaco Inc.*, 81 B.R. 806 (Bankr. S.D.N.Y. 1988); *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128 (D.N.J. 1995); *In re Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr. W.D.Mich. 1993).

28. Courts are granted great latitude in deciding on a case by case basis whether cause exists to terminate exclusivity. *In re Geriatrics Nursing Home, Inc.*, 187 B.R. at 132. Although the term "cause" is not defined in the Bankruptcy Code, the legislative history to Section 1121 suggest that Congress sought to balance the competing interest of a debtor in the survival of its business and the creditor interest in avoiding undue delay in the satisfaction of the debtor's obligations. H.R.Rep. No. 595, 95th Cong., 2d Sess. 231-232 (1978), reprinted in 1978 U.S.C.C.A.N. 5787.

29. In balancing the relative positions of various constituencies, courts examine a variety of factors to determine whether "cause" exists, many of which amount to variations on the same theme. *See, e.g., In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997); *In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996). Courts, including the Court in *Adelphia*, have identified nine (9) factors to consider when applying Section 1121(d) (the "***Adelphia* Factors***"):

- 5 -

1) the size and complexity of the case;

2) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

3) the existence of good faith progress towards reorganization;

4) the fact that the debtor is paying its bills as they become due;

5) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6) whether the debtor has made progress in negotiations with its creditors;

7) the amount of time which has elapsed in the case;

8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

9) whether an unresolved contingency exists.

*In re Adelphia Communications Corp.*, 352 B.R. at 587.

30. Courts do not merely tally the factors for and against exclusivity but rather view them holistically. *See Dow Corning Corp.*, 208 B.R. at 669 ("Sometimes one or more factors strongly point to a particular result while others point the other way only weakly. And sometimes certain factors are just more relevant or important than others."). Analyzing each of the *Adelphia* Factors in turn, cause exists to deny the Motion and to terminate the Exclusive Periods:

31. <u>Size and Complexity of the Case</u>:  Despite the Debtor's assertion to the contrary, the first *Adelphia* factor does apply to this case and it weighs in favor of terminating exclusivity. *See* Motion ¶ 15 ("This is not a mega case, so the first [*Adelphia*] factor does not apply."). This is not a particularly large or complex case. In fact, as set forth in the Motion, "The Debtor filed this petition to refinance the mortgage and/or sell one or both of the buildings on an orderly basis to ensure that all creditors are paid in full and to protect the owners' interest in the Properties." Motion ¶ 7. As set forth in the

- 6 -

Disclosure Statement, through the Plan, the Debtor sought to consummate the sale of the Prince Street Property and use the proceeds of such sale to reinstate and defease the loan. The present delay has not been caused by the complexity of these cases. As acknowledged by the Debtor in their opposition to the appointment of a receiver in the Foreclosure Action, the Debtor has been attempting to sell or refinance the Properties since June. *See Defendants GTA Realty II, LLC, Nancy Launi and Rocco Launi's Memorandum of Law in Opposition to Plaintiff's Order to Show Cause for a Shortened Notice Period to Move to Have a Receiver Appointed* (the "**Receiver Opposition**") p. 3.

> Understanding the growing deficit, Defendants entered into a contract of sale of 184 Price Street to close on or about June 11 for $6.1 million. Launi Aff. ¶ 5. However, the buyer backed out of the deal after 30 days of diligence. *Id.* Defendants have been actively seeking another buyer, and have several offers. *Id.* In addition, Defendants are attempting to lease the commercial space at 287 Bleecker Street, which would help solve the cash flow problem. *Id.* Defendants believe that they are close the being to pay off the mortgage or improve the cash flow such that appointing a receiver at this time to wrest control of the building from Defendants would only exacerbate problems, not solve them. *Id.*[5]

Although Rialto understands that two of the Debtor's insiders have proposed to purchase the Properties from the Debtor – through a private sale that will not be subject to either a market test or higher and better bids – and intends to modify its plan and disclosure statement to effectuate such a private sale, the Court should find that this last-minute/non-binding overture does not justify an extension of the Debtor's exclusivity period. As Rialto has experienced in the past, when faced with a deadline, the Debtor and its principals have repeatedly generated false hope through the introduction of non-binding commitments that are destined to fail. The latest offer is no different. The current delay is caused by the Debtor's principals deciding to reconsider their options. *See* Motion ¶ 7

---

[5] The Receiver Opposition, including its exhibits, is attached hereto as Exhibit A.

("Since then, the Debtors' principals have been reconsidering their options, including refinancing both Properties."). The amounts owing to Rialto exceed $5.1 million and unsecured claims against the Debtor are estimated to be approximately $1.6 million and, according to the Debtor, are expected to be paid in full, with interest. Continued delay and the administrative expenses associated with an extended stay in bankruptcy will only continue to negatively impact the Debtor's estate and potential recoveries. Accordingly, the size and complexity of the Debtor's Chapter 11 case does not support a further extension of the Exclusive Periods.

26. <u>Time Necessary to Negotiate a Plan</u>: The Debtor's debt structure is relatively straightforward and there are sufficient sums to ensure a solvent case, so there should be no impaired creditors. The Debtor has had ample time to formulate a confirmable plan that pays all creditors in full, but has not taken sufficient steps to do so. The Debtor's failure to present a confirmable solution does not support an extension of the Exclusive Periods.

27. <u>Good Faith Progress Towards Reorganization</u>: The Plan filed by the Debtor is utterly unconfirmable. *See, generally*, Disclosure Statement Objection. As set forth in the Disclosure Statement Objection, there are a number of deficiencies in the Plan that remain outstanding. As the Debtor has not sought to amend or modify its Plan or Disclosure Statement, it cannot be said that the Debtor is making good faith progress towards reorganization.

28. <u>A Receiver is Paying the Debtor's Debts as They Become Due</u>: The Foreclosure Action was commenced on May 15, 2014. Glass Ratner has acted and continues to act as the Receiver for the Properties since June 27, 2014. As the Debtor

admits in the Motion, it is currently unable to pay its debts as they become due. Motion ¶ 19 (admitting that "it does not appear the receiver can pay debt service"). In addition, Rialto has had to advance monies to satisfy real estate taxes owing because revenues from the Properties were no sufficient to satisfy the real estate taxes owing. Further, the fact that a receiver needs to be in place in order to operate the properties further weighs in favor of terminating exclusivity. This added expense to the estate was brought upon by the Debtor's own mismanagement.[6] Terminating exclusivity will allow other creditors to move this case forward and minimize additional drains on the estate. Thus, this factor also weighs in favor of denying the Motion and terminating exclusivity.

29.     <u>The Debtor Has Not Demonstrated Reasonable Prospects for Filing a Viable Plan</u>: All that is required in this case is a straightforward plan of liquidation through which all creditors are paid in full. Despite knowing the essential terms of a necessary plan, the Debtor has taken no steps of which Rialto is aware to prepare a plan that is confirmable or to circulate it to its constituencies. Instead, the Debtor has chosen to pursue patently unconfirmable avenues such as its attempt in the proposed Plan to reinstate the Loan without first curing all defaults under the Loan Documents. While Rialto is arguably most impacted by this delay, it is in the best interest of all creditors to be paid as soon as reasonably possible. Accordingly, in the interest of efficiency, other parties in interest should be afforded the opportunity to file and solicit acceptances for plans of liquidation.

30.     <u>The Debtor Has Not Made Progress in Negotiating with Creditors</u>: Rialto is unaware of any steps taken by the Debtor to negotiate with its unsecured creditors

---

[6]     Of note, in the Receiver Application to Employ Counsel, the Receiver states that its retention of counsel is necessary because of the "need to address several units where the occupants are not paying rent." Receiver Application to Employ Counsel ¶ 12.

regarding a plan structure. Because the Debtor has made no progress towards formulating a plan with its creditors, the Exclusive Periods should not be further extended.

31. <u>Time Elapsed in the Case</u>: This Chapter 11 case was filed over four (4) months ago and the Debtor is no closer to confirming a plan that it was on the Petition Date.

32. <u>No Unresolved Contingency Exists</u>: No unresolved contingency exists that would prevent the Debtor from proposing and confirming a plan. Accordingly, the extension of the Exclusive Periods is unnecessary.

33. The Debtor's attempt to extend the Exclusive Periods is an attempt to delay the plan process, to delay payment to Rialto and, ultimately, to avoid premiums due to Rialto under the applicable loan documents.

## **CONCLUSION**

34. The Debtor, its creditors and its estate will derive no benefit from any extension of the Exclusive Periods and, to the contrary, would benefit greatly (in the form of a prompt resolution to these cases) by terminating the Exclusive Periods to allow Rialto to file a proposed plan. Because no cause exists to extend the Exclusive Periods and, indeed, cause exists to immediately terminate exclusivity, Rialto requests that the Court grant the Objection and deny the Debtor's *Application for an Order Extending the Debtor's 120 Day Exclusive Period to File a Plan of Reorganization and the Debtor's 180 Day Period to Solicit Acceptances to a Plan of Reorganization*.

WHEREFORE, for the reasons set forth herein, Rialto respectfully requests that the Objection be granted and the Court grant such other relief that it deems necessary and proper.

Dated: February 20, 2015
Atlanta, Georgia

/s/ David A. Wender
David A. Wender (admitted *pro hac vice*)
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Email: David.Wender@alston.com
Telephone: (404) 881-7000

*Counsel for U.S. Bank National Association, as Trustee for the Registered Holders of GS Mortgage Securities Corporation III Commercial Mortgage Pass-Through Certificates, Series 2011-GC, by Rialto Capital Advisors, LLC, solely in its capacity as special servicer*